[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
Memorandum Filed May 9, 1997
In this summary process action, the plaintiffs, John and Anna Sullo, seek to evict the defendant, Main Stop Automotive, Inc., from leased premises for nonpayment of rent. In their complaint, CT Page 2478 the plaintiffs allege the following. The plaintiffs entered into a lease with the defendant on December 13, 1993, for premises located at 544 West Main Street, Branford, Connecticut, for a five-year term beginning January 1, 1994, and ending December 31, 1998. Rent was payable on the first day of each month. The defendant failed to pay the rent on November 1, 1996. The plaintiffs gave written notice of default on January 3, 1997, and on January 10 issued a notice to quit to the defendant, requiring it to vacate the premises by January 17. The defendant did not quit the premises, and on January 24, the plaintiff had the complaint served on the defendant.
The defendant has filed a motion to dismiss claiming lack of subject matter jurisdiction, lack of personal jurisdiction, and insufficient service of process. "A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court." (Emphasis in the original; internal quotation marks omitted.)Gurliacci v. Mayer, 218 Conn. 531, 544, 590 A.2d 914 (1991). "A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction." Upson v. State,190 Conn. 622, 624, 461 A.2d 1991 (1983).[1]
 I. A.
The defendant argues that the court lacks subject matter jurisdiction over this summary process action because the notice to quit was invalid due to untimeliness and insufficient service.
"Summary process is a statutory remedy that enables a landlord to recover possession from a tenant upon the termination of a lease." Sullivan v. Nameaug Walk-in Medical Center, P.C.,35 Conn. App. 185, 188, 644 A.2d 398 (1994), appeal dismissed,233 Conn. 213, 657 A.2d 639 (1995). The Superior Court has subject matter jurisdiction over summary process actions. See General Statutes § 47a-23a. "The jurisdiction of the Superior Court in summary process actions, however, is subject to a condition precedent." Lampasona v. Jacobs, 209 Conn. 724, 728-729,553 A.2d 175, cert. denied, 492 U.S. 919, 109 S.Ct. 3244, 1061 L.Ed.2d 590 (1989). "As a condition precedent to a summary process action, proper notice to quit is a jurisdictional necessity." Id. CT Page 2479
General Statutes § 47a-23 sets forth the requirements of a notice to quit.[2] The language of the statute "requires that the lease agreement first terminate according to its terms before the remedy of summary process is available to the lessor." Sullivan v.Nameaug Walk-in Medical Center, P.C., supra, 35 Conn. App. 188. In Sullivan, the lease did not contain a provision stating that the lease could be terminated upon nonpayment of rent when due, and thus it could not provide a basis for termination that would allow the invocation of § 47a-23. Id., 189.[3] In this case, however, the plaintiffs' complaint alleges that the lease listed specific defaults upon which the lease would terminate, one of which was nonpayment of rent. The plaintiffs allegedly notified the defendant upon nonpayment of rent that it was in default and gave it five days in which to cure the default. Receiving no response within the five days, the plaintiffs issued the notice to quit. The notice to quit serves the purpose of an "unequivocal manifestation by the lessor that he terminates the rental agreement." Messinger v. Laudano, 4 Conn. App. 162, 163,493 A.2d 255, cert. denied, 196 Conn. 812, 495 A.2d 279 (1985).
The defendant argues that the notice to quit was defective because it was issued in January for an alleged failure to pay rent in November. Citing Goldberg v. Rodriquez, 40 Conn. Sup. 4,5, 478 A.2d 628 (1982), the defendant argues that a notice must require the tenant to vacate the premises in the same month in which the alleged nonpayment of rent occurred. That rule, what was always limited to month-to-month tenancies, was legislatively overruled in what has now been codified as General Statutes § 47a-23
(d).[4] The lease in the present case was for an initial period of five years, and would not lapse until Dec. 31, 1998. According to the terms of the lease, it could be terminated for nonpayment at any time.[5]
Because the lease specified that nonpayment of rent could serve as a basis for termination of the lease, and there is no requirement that when a commercial lease gives rise to the tenancy the notice to quit be served within the month of nonpayment, the notice to quit at issue is facially valid.
 B.
The defendant argues next that the notice to quit was not properly served on the defendant because the business was closed, and that to serve the notice at the "usual place of business" is nonsensical because there is no "usual place of business" of a CT Page 2480 corporation that is no longer in operation. The plaintiff argues that the plain language of the statute only requires service "at the place of the commercial establishment" and does not make a distinction between an operating business and a defunct one.
General Statutes § 47a-23 (c) allows for service of process of the notice to quit to be made to each lessee, either personally or at his abode, or "at the place of the commercial establishment."[6]
"[T]he general rule is well established that where a specified mode of giving notice is prescribed by statute, that method is exclusive." Windsor Properties, Inc. v. Great Atlantic PacificTea Co., 35 Conn. Sup. 297, 301, 408 A.2d 936 (1979). Section 47a-23
(c) makes a distinction only between residential and commercial property, and has no special provisions for corporate defendants or the status of the business located at the property. "Nothing in General Statutes [§ ] 47a-23 requires service of a Notice to Quit on the specific individuals listed in General Statutes § 52-57."Scerrato v. Shoshie Baking Co., Superior Court, judicial district of Hartford-New Britain at New Britain, No. SPN-9102-15498-NB (March 22, 1991) (Berger, J.). The unambiguous language of the statute mandates that "abode" service at the place of the commercial establishment is proper. See GGG v. Nathan's Famous,Inc. Superior Court, judicial district of New Haven, Docket No. SPNH 9403-38416, 11 CONN. L. RPTR. 495 (April 27, 1994) (Mintz, J.) (service "at the place of occupancy of a business is proper");Scerrato v. Shoshie Baking Co., supra, (notice to quit was left with an employee of the company who was not a corporate officer);Karathanasopoulos v. Omni Building, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. SPH 9006-55957, 3 CONN. L. RPTR. 665 (December 17, 1990) (Berger, J.) (when the property at issue was a parking lot, leaving notice at the lessee's neighboring building complies with § 47a-23 (c)); McIntyrev. TLC Oil Co., Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. SPH-8308-20082 (December 5, 1983) (Maloney, J.) (leaving notice in the hand of the person in charge of premises complies with statute).
Nor is it necessary for a sheriff to hand the notice to a particular person "at the place of the commercial establishment". "`When language used in a statute is clear and unambiguous, its meaning is not subject to modification or construction.' Cilley v.Lamphere, 206 Conn. 6, 9-10, 535 A.2d 1305 (1988). Absent ambiguity, the courts cannot read into statutes, by construction, provisions that are not clearly stated. Hayes v. Smith, 194 Conn. 52,58, 480 A.2d 425 (1984)." Battersby v. Battersby, 218 Conn. 467,470, 590 A.2d 427 (1991). Moreover, when the legislature has CT Page 2481 intended that service on a corporate entity be made by servicing a particular person or officer, it has expressly said so. See, e.g., General Statutes §§ 52-57, 33-663, 33-1053.[7]
In conclusion, the court has subject matter personal jurisdiction over this summary process action because a valid notice to quit was properly served on the tenant.
 II
The defendant finally argues that the complaint was improperly served, thus depriving the court of personal jurisdiction over the defendant. He bases his argument on the fact that § 33-663,[8] which provides for service on a corporation when there is no statutory agent for process, did not apply because it became effective on January 1, 1997, and the corporation had been dissolved by default prior to that. Section 33-663 became effective January 1, 1997, as part of the Connecticut Business Corporation Act, Public Act No. 94-186, as amended by Public Act No. 96-271 § 30. Section 206 of Public Act No. 94-186, codified as § 33-995, provides that the Act applies to all domestic corporations in existence on January 1, 1997. See also S. Cross, Connecticut Corporation Law and Practice (1996) § NBCA, p. 3. Accordingly, the defendant could only prevail with this argument if Main Stop Automotive did not have the status of a corporation on January 1, 1997.
DeGrasse continued to do business under the corporate name after the dissolution. Indeed, the corporation entered into the lease with the plaintiff after it had been dissolved by default. It held itself out as a corporation and the plaintiff recognized it as such. The defendant operated as a de facto corporation. "The corporation is a de facto corporation where there is a law authorizing such a corporation and where the company has made an effort to organize under the law and is transacting business in a corporate name. Cook, Corporations (8th Ed.) p. 773, § 234. A de facto corporation is an apparent corporate organization asserted to be a corporation by its members and actually existing as such, but lacking the creative fiat of the State. Elliott, Private Corporations (4th Ed.) p. 77, § 72; 1 Thompson, Corporations (3d Ed.) § 266 and cases. A de facto corporation . . . is an association which actually exists for all practical purposes as a corporate body, but which, because of failure to comply with some provision of the law, has no legal right to corporate existence as against a direct attack by the State. 14 C. J p. 204, § 215. A CT Page 2482 corporation de facto is in plain English a corporation in fact. It can incur obligations as a corporation which do not bind those who associated to constitute it, in their individual capacities.DiFrancesco v. Kennedy, 114 Conn. 681, 687-88, 160 A. 72 (1932)."Clark-Franklin-Kingston Press v. Romano, 12 Conn. App. 121, 124,529 A.2d 240 (1987).[9]
Section 33-663 provides that "[i]f a corporation has no registered agent, or the agent cannot with reasonable diligence be served, the corporation may be served by registered or certified mail, return receipt requested, addressed to the secretary of the corporation at its principal office." The plaintiff submitted an affidavit from the sheriff, attesting that he attempted to locate John Buckley, the statutory agent for process listed in the records filed for the corporation, and was unable to do so. He then mailed the complaint, via certified mail to the Secretary of the Corporation at its principle place of business, 344 W. Main St., Branford.
According to the statute, § 33-663, "[s]ervice is perfected under this subsection at the earliest of: (1) The date the corporation receives the mail; (2) the date shown on the return receipt, if signed on behalf of the corporation; or (3) five days after its deposit in the United States mail, as evidenced by the postmark, if mailed postpaid and correctly addressed." The sheriff's return includes the receipt for the certified mail, evidencing pre-payment, the correct address, and a postmark of January 24, 1997. This satisfies the requirements of subsection (3) of General Statutes § 33-663 (b) so that service was completed on January 29, 1997.
For these reasons, the defendant's motion to dismiss is denied.
LEVIN, J.